UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA M. KING,

      Plaintiff,                   CIVIL ACTION NO. 14-cv-14330

    v.                            DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF           MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Tina M. King seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 16). Plaintiff has also filed a response to Defendant's Motion. (Docket no. 17.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be DENIED and Defendant's Motion for Summary Judgment (docket no. 16) be GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with protective filing dates of January 15, 2012 and January 9, 2012, respectively, alleging that she has been disabled since June 8, 2006, due to asthma; the early stages of emphysema; diabetes; high blood pressure; chronic cough; numbness in her left thigh, the side of her right calf, and the big toe of her right foot; a fallen arch on her left foot; bouts of mild depression; and possibly sleep apnea and sciatica. (TR 79-80, 129-37, 152.) The Social Security Administration denied Plaintiff's claims on May 3, 2012, and Plaintiff requested a *de novo* hearing. (TR 59-80, 93-94.) On May 23, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Lawrence E. Blatnik. (TR 26-58.) Plaintiff amended her alleged onset date to June 2, 2008 at the hearing. (TR 30, 146.) In a June 6, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 13-21.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff set forth the procedural history of this matter and a brief summary of the medical evidence. (Docket no. 14 at 7-11.) Plaintiff also submitted a detailed outline of the medical evidence as an exhibit attached to her brief. (Docket no. 14-2.) The ALJ set out a detailed, factual recitation with regard to Plaintiff's medical record, Plaintiff's hearing testimony, and the vocational expert's (VE's) testimony in his decision. (TR 15-21.) Defendant, in addition to adopting the ALJ's recitation of the facts, also provided a summary of the medical evidence.

(Docket no. 16 at 4-9.) There are no material inconsistencies among the aforementioned accounts of the record; therefore, the undersigned will incorporate the factual recitations by reference. Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

**IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the original alleged onset date of June 8, 2006, and that Plaintiff suffered from the following severe impairments: asthma; chronic obstructive pulmonary disease (COPD); hypertension; gastroesophageal reflux disease (GERD); diabetes; and obesity. (TR 15-17.) The ALJ also found that Plaintiff's aortic aneurysm and mood disorder were non-severe impairments. (TR 17-18.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 18.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She can lift and carry ten pounds occasionally and less than ten pounds frequently; she can sit at least six hours, and stand and walk up to two hours, in an eight-hour work day; and she requires a sit/stand option that allows her to change position every 20 to 30 minutes. The claimant cannot climb ladders, ropes or scaffolds; can occasionally balance, stoop, crouch, crawl, squat, or climb ramps or stairs; must avoid concentrated exposure to extreme heat, extreme cold, humidity, fumes, odors, dust, gases or respiratory irritants; cannot use air, pneumatic, power, torque or vibratory tools; and cannot work with dangerous or unprotected machinery or at unprotected heights.

(TR 18-20.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 20-21.)

3

Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from June 8, 2006, through the date of the decision. (TR 13, 21.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting

that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

5

**C. Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four because (1) the ALJ failed to properly apply Social Security Ruling (SSR) 02-1p in evaluating Plaintiff's obesity; and (2) the substantial evidence of record does not support the ALJ's RFC finding that Plaintiff can perform sustained work activities at a limited sedentary level. (Docket no. 14 at 18-27.)

*1. The ALJ's Consideration of Plaintiff's Obesity*

Plaintiff asserts that while the ALJ determined that she had a severe impairment of obesity, he did not properly consider the impact of Plaintiff's obesity or explain how Plaintiff's obesity affected her RFC in his decision. (Docket no. 14 at 18-22; docket no. 17 at 2-4.) In support of this contention, Plaintiff relies on SSR 02-1p, which discusses obesity as a risk factor for other impairments. (*Id.*) SSR 02-1p classifies individuals with regard to obesity by

considering their Body Mass Index (BMI). SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). Individuals with a BMI greater than or equal to 30 are considered "obese," with those at or above a BMI of 40 having the most "extreme" type of obesity with the greatest risk for developing obesity-related impairments. *Id*. In evaluating the effects of obesity, SSR 02-1p "does not mandate a particular mode of analysis," but it does "direct[] an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citation and internal quotation marks omitted). "Regarding a claimant's residual functional capacity, the Ruling provides: 'As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.'" *Sleight v. Comm'r of Soc. Sec.*, 896 F.Supp.2d 622, 631 (E.D. Mich. 2012) (Michelson, M.J.) (quoting SSR 02-1p, 2002 WL 34686281, at *7).

At the hearing, Plaintiff testified that she was 5'5 1/2" tall and weighed 267 pounds. (TR 33.) Those statistics, according to Plaintiff, depict a BMI of 44.1, or Level III obesity. (Docket no. 14 at 8.) At step two of the sequential evaluation process, the ALJ found that Plaintiff's obesity was a severe impairment. (TR 15.) The ALJ then devoted a paragraph to Plaintiff's obesity in his discussion of Plaintiff's RFC:

> The claimant is somewhat obese, and I have considered how her weight affects her ability to perform routine movements and necessary physical activity within the work environment. I am aware that obesity often complicates existing medical problems, and that the consequences of this condition may not be readily apparent. The combined effects of obesity with other impairments may be greater than might be expected without the disorder. I examined any added and accumulative effects this condition played on her ability to function, and to perform routine movement and necessary physical activity within the work environment. In spite of her weight, clinicians observed the claimant ambulate well without an assistive device (she reported some periodic use of a cane) and to retain functional range of motion. The claimant's neurological functions were intact, and her musculoskeletal and extremity reviews were free of deformity,

>     clubbing, cyanosis, edema, heat, discoloration, ulceration, diminished pulsation or atrophic changes.

(TR 19.)

Plaintiff asserts that this passage does not adequately comply with SSR 02-1p. Specifically, Plaintiff asserts that the ALJ recognized the duties imposed upon him by the Ruling, but he failed "to take into consideration the obvious limitations that obesity imposes on the claimant and instead cherry picked the [medical evidence of record] to retreat from his finding that obesity is a severe impairment." (Docket no. 14 at 20.) As Defendant points out, however, Plaintiff does not cite to any portion of the medical record that the ALJ failed to, but should have, considered in evaluating Plaintiff's obesity. (Docket no. 16 at 14.) Instead, Plaintiff invites the Court to conduct its own review of Plaintiff's medical records to pinpoint the ALJ's error. (Docket no. 17 at 4.) But the "'court is under no obligation to scour the record for errors not identified by [the] claimant.'" *Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, *14 (E.D. Mich. Jan 25, 2013) (Grand, M.J.) (quoting *Martinez v. Comm'r of Soc. Sec.*, No. 09-13700 (E.D. Mich. Mar. 2, 2011)). Additionally, it is not the Court's function to reweigh or resolve conflicts in the evidence. Accordingly, Plaintiff's argument fails in this regard.

Plaintiff's argument also fails because the Sixth Circuit has found that an ALJ does not need to explicitly "mention [] obesity if he credits an expert's report that considers obesity." *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x 435, 443 (6th Cir. 2010) (citing *Bledsoe v. Barnhart*, 165 F.App'x 408, 412 (6th Cir. 2006)). Here, the ALJ accorded significant weight to the opinion of B.D. Choi, M.D., the non-examining state-agency physician, who conducted the initial disability determination. (TR 20.) On May 3, 2012, Dr. Choi acknowledged that Plaintiff had a BMI of 43 and was morbidly obese, but he found that Plaintiff was able to perform light

8

work. (TR 66, 76.) This credit alone would satisfy the Sixth Circuit's precedent. For the reasons stated above, the undersigned finds that the ALJ adequately considered Plaintiff's obesity in accordance with SSR 02-1p, *Bledsoe*, and *Coldiron*, and recommends that Plaintiff's Motion for Summary Judgment on the basis of the ALJ's consideration of Plaintiff's obesity be denied.

### 2. *The ALJ's Assessment of Plaintiff's RFC*

Plaintiff also asserts that the substantial evidence of record does not support the ALJ's RFC finding that Plaintiff can perform sustained work activities at a limited sedentary level. (Docket no. 14 at 23-27; docket no. 17 at 4-6.) Defendant counters that "[t]here was no error in the ALJ's RFC determination where the medical evidence showed minimal impairment, no treating physician opined any functional limitations, and his RFC finding was even more limited than the state agency physician's finding, the only opinion of functional limitations in the record." (Docket no. 16 at 19-24.)

The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities. Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5. It is defined as the most, not the least, the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ derives the RFC after considering the medical and other relevant evidence in the record. *Id*. He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7. In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis. *Id.* The ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by

and not inconsistent with the other substantial evidence of record. However, at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible.

First, Plaintiff argues that her need for a sit/stand option would preclude sedentary work. (Docket no. 14 at 23.) A sedentary job is defined as one that involves sitting, with an occasional amount of walking and standing required. 20 C.F.R. § 404.1567(a). "Alternating between sitting and standing, however, may not be within the definition of sedentary work." *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 819 (6th Cir. 1988) (citations omitted). Here, the ALJ found that Plaintiff could perform sedentary work but that she also required a sit/stand option that would allow her to change position every 20 to 30 minutes. (TR 18.) The ALJ presented those limitations to the VE in his hypothetical questions, and the VE testified that there are a significant number of jobs in the regional and national economy that an individual with those limitations could perform. Accordingly, Plaintiff's argument fails in this regard.

Next, Plaintiff argues that neither her testimony nor her symptoms "allow regular and continuing work" and that the medical records, read in their entirety, support her testimony. (Docket no. 14 at 23-27.) Plaintiff further argues that the ALJ ignored significant record evidence that supports Plaintiff's complaints and only commented on non-issues in his discussion of Plaintiff's ailments, forgetting her obesity, breathing problems, and fatigue. (*Id*. at 26.) A contemporaneous review of Plaintiff's argument with the ALJ's decision, however, reveals that the ALJ did consider the evidence Plaintiff cites to in her brief. (*Compare id*. at 25-26 *with* TR 15-17.) To the extent that Plaintiff argues that the ALJ should have explicitly discussed the exact same evidence that Plaintiff cites in her brief, her argument fails, as it is axiomatic that an ALJ need not discuss every piece of evidence in the record. *Kornecky v.*

*Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citation omitted). Furthermore, as discussed above, contrary to Plaintiff's assertion, the ALJ did not "forget" about Plaintiff's obesity. He also did not "forget" about Plaintiff's alleged breathing problems and fatigue; the ALJ acknowledged Plaintiff's complaints, and found them to be not entirely credible. (TR 18-19.)

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location,

11

duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

In reaching his credibility determination, the ALJ reasoned that no physician imposed any work-preclusive functional limitations on Plaintiff or opined that Plaintiff was completely disabled. Plaintiff argues that this line of reasoning is erroneous because Dr. Cathy Glick, M.D., a cardiologist who conducted a consultative examination of Plaintiff in April of 2013 stated that Plaintiff "cannot work because of her shortness of breath." (Docket no. 14 at 20 (quoting TR 310).) Defendant counters that what appears to be Dr. Glick's opinion regarding Plaintiff's ability to work is, in all probability, Dr. Glick's recitation of Plaintiff's subjective complaints. (Docket no. 16 at 16.) Dr. Glick makes the statement at issue in the section of her report that summarizes Plaintiff's medical history. And the statements that Dr. Glick makes before and after the statement at issue, that Plaintiff "evidently has significant problems with her back and her knees and is trying to be certified for disability" and Plaintiff "does not have any definite drug allergies," support Defendant's contention, as their context does not support such an opinion statement of disability. Moreover, in the sections of her report titled "Impression" and "Plan," Dr. Glick provides no opinions regarding Plaintiff's functional limitations or her ability to work. Instead, she notes Plaintiff's chest discomfort and risk factors, she sets forth her plans to start Plaintiff's treatment by administering certain tests, and she advises that recommendations

will be forthcoming after the test results are in. Hence, Plaintiff's argument regarding Dr. Glick and the ALJ's line of reasoning here are unavailing.

Even if the ALJ's reasoning regarding the lack of a physician's opinion on Plaintiff's disability was erroneous, the ALJ set forth numerous legitimate reasons for discrediting Plaintiff's testimony, and his assessment of Plaintiff's credibility should not be disturbed. For example, the ALJ noted that the results of Plaintiff's heart, lung, and other clinical examinations did not reveal debilitating results. (TR 19.) He pointed out that imaging studies of Plaintiff's chest were commonly negative for infiltrates, effusions, or focal considerations; that Plaintiff's breathing status did not necessitate hospitalization, emergent care, or oxygen supplementation; and that workups of Plaintiff's heart did not reveal evidence of irregularities. The ALJ further reasoned that the objective medical evidence did not support Plaintiff's claims of pain and fatigue, her alleged need to lie down for extended intervals of time with her legs elevated, or her alleged difficulty with handling and fingering functions.

The ALJ also noted Plaintiff's admitted activities of daily living:

> Within testimony or the written record, it was reported that the claimant performed self-care tasks, laundered clothing, washed dishes, swept and mopped floors, completed light household cleaning chores, shopped, attended to financial matters, planted flowers in the summer, walked on a treadmill, read, watched television, and spent time with family (Exhibits 4E, 13F p. 4 and testimony).

(TR 19.) Plaintiff claims that the ALJ's statement above reads as if Plaintiff was able to perform these activities on a continuous and indiscriminate basis, which she claims is erroneous because she can only perform these activities on "good days." (Docket no. 14 at 25.) Defendant responds that Plaintiff's claim is speculative, as there is nothing in the ALJ's findings that states as such. (Docket no. 16 at 23.) The undersigned agrees with Defendant.

As discussed above, the ALJ provided specific reasons for discounting Plaintiff's credibility in his decision, some of which apply the factors set forth in 20 C.F.R. § 416.929(c)(3). Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard.

Finally, Plaintiff, in her reply brief, claims that the ALJ did not properly assess Plaintiff's RFC because he overlooked the findings and opinions of Plaintiff's treating and examining physicians and did not even consider the opinions of Dr. Choi, the state-agency non-examining physician. (Docket no. 17 at 5.) Plaintiff, however, does not point to one finding or opinion regarding her functional limitations issued by a physician to support her contention, and the Court finds none. Moreover, with regard to Dr. Choi, Plaintiff is blatantly incorrect, as the ALJ discussed Dr. Choi's opinion that Plaintiff was capable of performing light work, and he afforded it significant weight. (TR 20.) The ALJ then imposed further restrictions on Plaintiff's ability to work than did Dr. Choi, a result more favorable to Plaintiff. For the foregoing reasons, Plaintiff's arguments regarding the ALJ's assessment of Plaintiff's RFC lack merit, and her Motion for Summary Judgment on the basis of an improper RFC should be denied.

### 3. *Plaintiff's Other Arguments*

Plaintiff seemingly finds fault with the ALJ's consideration of Plaintiff's alleged sleep apnea and aortic aneurysm. (Docket no. 14 at 21-22.) Plaintiff asserts that she "exhibited and testified to all the symptoms of [sleep apnea] and was being tested for the disease." (*Id.* at 21.) But the record does not include the results of the alleged testing, and there is no evidence that Plaintiff received such a diagnosis. With regard to Plaintiff's aortic aneurysm, the ALJ

acknowledged that Plaintiff was recently diagnosed, but he found that it was not a severe impairment. (TR 17.) Plaintiff does not explain why the ALJ's findings (or non-findings) regarding Plaintiff's aortic aneurysm or alleged sleep apnea are erroneous. The Court is not obligated to develop these arguments on Plaintiff's behalf, and it declines to do so. *See Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan. 25, 2013) (Grand, M.J.) (citation omitted).

## VI. CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 14) and GRANT Defendant's Motion for Summary Judgment (docket no. 16).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: December 3, 2015            s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: December 3, 2015            s/ Lisa C. Bartlett
                                   Case Manager